**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

In re:

EVAN ROSENFELD,

             Debtor.

---

WHITAKER SECURITIES, LLC,

             Plaintiff,

        - against -

EVAN ROSENFELD,

             Defendant.

---

Chapter 11

Case No.: 14-11347 (MEW)

Adv. Proc. No.: 14-02251 (MEW)

<u>**DECISION GRANTING MOTION TO DISMISS WITHOUT PREJUDICE**</u>

**A P P E A R A N C E S :**

LINDABURY, McCORMICK, ESTABROOK & COOPER, P.C.
*Attorneys for Plaintiff Whitaker Securities, LLC*
331 Newman Springs Road, Suite 225
Red Bank, NJ 07701
By:    Scott C. Pyfer

THE MEYERS LAW FIRM
*Attorneys for Defendant Evan Rosenfeld*
1123 Broadway, Suite 301
New York, NY 10010
By:    Glenn R. Meyers

**MICHAEL E. WILES**
**UNITED STATES BANKRUPTCY JUDGE**

       Whitaker Securities LLC claims that it suffered losses because its former employee, debtor

Evan Rosenfeld, made unsuitable and unauthorized securities trades for customers.  Whitaker

argues that its claims to recover the losses from Rosenfeld are excepted from discharge in

Rosenfeld's chapter 7 case.  Rosenfeld has moved to dismiss Whitaker's nondischargeability

Complaint.  The motion to dismiss is granted without prejudice to Whitaker's right to file a revised complaint.

## JURISDICTION

This is a core proceeding to determine "the dischargeability of particular debts," *see* 28 U.S.C. § 157(b)(2)(I), and this Court has jurisdiction under 28 U.S.C. §§ 1334(a) and 157(a).

## DOCUMENTS RELEVANT TO THE MOTION

The Complaint alleges that Whitaker's claims are excepted from discharge, but the claims themselves are set forth in an amended statement of claim that Whitaker filed with the Financial Industry Regulatory Authority.  The Complaint also refers to a settlement with customers in another FINRA arbitration.  The parties disagree as to which documents from these proceedings should be considered by the Court in ruling on the motion to dismiss.  Whitaker argues that the Court should review the Complaint, the settlement agreement, and the amended FINRA statement of claims against Rosenfeld.  (Opp'n to Mot. to Dismiss 2, ECF No. 7.)  Rosenfeld argues that the entire record of both FINRA arbitrations has been "incorporated and referenced" in the Complaint. (Mot. to Dismiss ¶¶ 8, 17, ECF No. 5.)

In ruling on a motion to dismiss a court is entitled to consider the facts alleged in the complaint, documents attached to it or incorporated in it by reference, documents "integral" to the complaint and relied upon in it, and facts of which judicial notice may be taken.  *Grant v. County of Erie*, 542 Fed. Appx. 21, 23 (2d Cir. 2013) (citing *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995); *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).

### A.    The FINRA Statement of Claim

The incorporation of other pleadings by reference is allowed by Rule 10(c) of the Federal Rules of Civil Procedure, made applicable here by Bankruptcy Rule 7010.   There is some disagreement among the courts as to whether Rule 10(c) permits the adoption of allegations in a pleading in a completely separate action.  *See, e.g.*, *Sherman v. A.J. Pegno Constr. Corp.*, 528 F. Supp. 2d 320, 323 n.5 (S.D.N.Y. 2007) (allowing incorporation by reference of allegations stated in a "Standard Asbestos Complaint" in individual plaintiffs' complaints); *Constellation Energy Commodities Group Inc. v. Transfield ER Cape Ltd.*, 801 F.Supp.2d 211, 223 (S.D.N.Y. 2011) (disallowing adoption of pleadings by *another* plaintiff in a separate action); *United States v. Int'l Longshoremen's Ass'n*, 18 F. Supp. 2d 422, 465 (E.D.N.Y. 2007) (noting split of authorities on the issue).   The reluctance of some courts to allow incorporation by reference is grounded in the fear that such pleading will not provide adequate notice as to the incorporating party's claims, defenses, or factual allegations.  *See Cooper v. Nationwide Mut. Ins. Co.*, 2002 U.S. Dist. LEXIS 21552, at \*19 (E.D. Pa. Nov. 7, 2002).  Here, there is no danger of such prejudice.  The parties are the same as those in the FINRA arbitration, the Complaint alleges that the claims that are excepted from discharge are the FINRA claims, and the parties did not dispute that the FINRA statement of claim should be treated as part of the Complaint for purposes of the motion to dismiss.

### B.    The Settlement Agreement

The Complaint also discusses the terms of the settlement agreement among the parties and indicates that the amount paid by Whitaker pursuant to this agreement is the basis for part of its claim against Rosenfeld.  Materials outside the complaint may be considered on a motion to dismiss if they are "integral" to the complaint and it is clear on the record that no dispute exists regarding authenticity or accuracy of the materials.  *Faulkner v. Beer*, 463 F.3d 130, 133–35 (2d

Cir. 2006).  Given that Whitaker's claim is one for indemnification or contribution of the amount

paid pursuant to this settlement agreement, it is clearly integral to the Complaint, and each party

treated the settlement agreement as something the Court should consider in ruling on the motion.

### C.    Other FINRA Arbitration Documents

The Complaint does not refer to any documents in the FINRA arbitrations with the

exception of Whitaker's statement of claim against Rosenfeld, although the Complaint does

mention that the prior FINRA claim by the customers was settled.  Documents from that prior

FINRA proceeding may be relevant to the merits of Whitaker's claim, but it cannot be said that

they are integral to the Complaint or that the Complaint is predicated upon them.  *See Cortec*

*Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (if plaintiff's claims are predicated

on a document, defendant may attach that document to motion to dismiss even if plaintiff's

complaint does not explicitly refer to it).  The Court will not consider them in ruling on the motion

to dismiss.

## FACTS ALLEGED BY WHITAKER

The allegations made by Whitaker in the Complaint and in the FINRA statement of claim

are presumed to be true for purposes of this decision.

Rosenfeld was employed by Whitaker as a retail broker.  Rosenfeld convinced two

customers (Morgenroth and Goldberg) to move several brokerage accounts to Whitaker, and

Goldberg later opened another account at Whitaker.  The customers relied on Rosenfeld to pick

suitable securities and to buy and sell securities at the best times.  Instead, Rosenfeld made risky

and inappropriate trades, often without consulting the customers in advance.  (Compl. ¶¶ 12–18,

ECF No. 1; Am. FINRA Claim 4, ECF No. 7-1.)

Pursuant to Regulation T, Whitaker prohibits margin loans that exceed 75% of an account's value.  At various times the accounts ran afoul of this limit.  Penson Financial Services, Inc. (the clearing broker for Whitaker) restricted trading in the accounts when the limits were reached.  Rosenfeld nevertheless continued to make unauthorized trades, with the help of a Penson employee who was Rosenfeld's friend.  (Compl. ¶¶ 19–20; Am. FINRA Claim 5–9.)  Rosenfeld did not tell the customers that they should liquidate securities or reduce their margin loans, and he continued to make trades without the customers' prior approval.  (Am. FINRA Claim 6.)

In August 2008 an Operations Manager at Whitaker refused to allow further trading in an account.  However, Rosenfeld and his cohort at Penson told the Operations Manager that the account was being reopened because additional mutual fund holdings were being deposited.  The Operations Manager then agreed to allow further trades, which Rosenfeld again made without the customers' authorization.  A few days later Penson liquidated the accounts after price movements resulted in a large negative equity balance.  (Compl. ¶ 21; Am. FINRA Claim 10–12.)

After the accounts were liquidated the customers said they had not authorized the losing trades and refused to cover the losses.  Penson withdrew $397,253.00 from Whitaker's revenue account to cover the negative balances, and Rosenfeld resigned as an employee of Whitaker.  (Compl. ¶¶ 21–23; Am. FINRA Claim 12–13.)  The customers later filed a FINRA statement of claim alleging that Rosenfeld and Whitaker were liable for other losses of principal that they had suffered.  Whitaker settled that claim in September 2009 for $200,000.

Whitaker then filed its own FINRA statement of claim seeking contribution or indemnification from Rosenfeld for Whitaker's losses and alleging that Rosenfeld's conduct was wrongful in two ways: (a) the trades were unauthorized, and (b) the trades were not suitable for the customers.  (Am. FINRA Claim 16–17.)  Whitaker seeks recovery of its out-of-pocket losses

($597,253), the attorneys' fees it paid in the dispute with the customers ($92,973.85), and other costs.

The Complaint in this Court adds a number of new characterizations of Rosenfeld's conduct and new descriptions of Whitaker's legal theories. Whitaker alleges that:

- Rosenfeld breached an agreement to perform duties "faithfully, industriously, and to the best of [his] ability, experience and talents" (Compl. ¶ 12);

- The trades and margin loans violated industry rules and regulations and Whitaker's internal policies (Compl. ¶¶ 12, 16, 17);

- Rosenfeld violated fiduciary duties that he owed to Whitaker (Compl. ¶ 13);

- Rosenfeld's trading amounted to mismanagement, fraud or defalcation in the course of Rosenfeld's duties as a fiduciary for the customers (Compl. ¶¶ 13, 26, 29);

- The "unsuitable and unauthorized" trades were "fraudulent" as to the customers, and involved "trading securities by false pretenses, false representations and/or actual fraud" (Compl. ¶¶ 23, 25, 26, 28, 29); and

- Rosenfeld intentionally made unauthorized trades and intentionally violated FINRA rules and Whitaker's policies, and this amounted to an infliction of willful and malicious injury. (Compl. ¶¶ 12, 16, 17, 30, 31.)

## DISCUSSION

### I.    Is Whitaker Entitled to Make Claims for Contribution or Indemnification?

Rosenfeld argues that he owes no contribution or indemnification obligation to Whitaker and that Whitaker therefore has no claims to be excepted from discharge.

### A.    Contribution/Indemnity as to the Customer Settlement

The right to contribution under New York law is codified by Civil Practice Law and Rules § 1401, which states that two or more persons who are liable for damages for the same personal injury, injury to property, or wrongful death, may claim contribution among them.  Section 15-108 of the General Obligations law limits this right by stating that "[a] tortfeasor who has obtained his own release from liability shall not be entitled to contribution from any other person."  Whitaker obtained a full release from the customers, and as a matter of New York law that release terminated any contribution claim against Rosenfeld in the absence of a waiver of the statute by Rosenfeld. *See Mitchell v. New York Hosp.*, 461 N.E.2d 285 (N.Y. 1984); *City of New York v. Black & Veatch*, No. 95 Civ. 1299 (LAP), 1997 WL 624985 (N.Y. Oct. 6, 1997).  There is no such waiver of GOL § 15-108 by Rosenfeld in the settlement agreement, and Whitaker has not alleged the existence of any such waiver.

The right to indemnification, unlike the right to contribution, is not subject to the limitations of GOL § 15-108.  The Court of Appeals explained the difference in *McDermott v. City of New York*:

> The effect of [GOL § 15-108] is to permit a joint tort-feasor to buy his peace by terminating, completely, his rights and liabilities in the action.  It is obvious that this statutory scheme can find application only where the tort-feasors share, in some degree, responsibility for the wrong.  For it is only in such situation that the impact of a settlement upon proportional liability need be considered.  By contrast, where indemnity is at issue, one party is alleging that the other party should bear complete responsibility for the tort.  Should the party seeking indemnity negotiate a settlement, this in itself would have no consequences upon the indemnity claim.  Irrespective of the amount of the settlement, the indemnitor is either totally responsible or not.

406 N.E.2d 460, 464 (N.Y. 1980).  Unlike the right to contribution, which is created by statute or judicial decision, the right to indemnification is created by contract, either express or implied.  *Id*. at 462; *see also Black & Veatch*, 1997 WL 624985, at *8.  Indemnification for amounts paid as a

result of vicarious liability, whereby an employer is held liable for his employee's wrongdoing, is a classic example of a right to indemnification that is implied in law. *See McDermott*, 406 N.E.2d at 463 n.4; *see also* 53 N.Y. Jur. 2d Employment Relations § 408 ("The employee is liable to the employer for damages the employer has been compelled to pay to third persons because of the negligent and wrongful act of the employee where the employer itself is not at fault.").

Whitaker's claim for indemnification by Rosenfeld for amounts paid to settle its vicarious liability to the customers should be excepted from discharge to the same extent that the customers' claims against Rosenfeld would have been excepted from discharge.  Section 523 states that "any" debt "for" certain listed events is excepted from discharge, and the Supreme Court has interpreted this language as including all debts "arising from" any of the listed circumstances. *See Cohen*, 523 U.S. at 220; *see also Field v. Mans*, 516 U.S. 59, 61, 64 (1995) (describing section 523(a)(2)(A) as barring discharge of debts "resulting from" or "traceable to" fraud). Whitaker's indemnification claim arises directly from Rosenfeld's conduct, and Rosenfeld's "debt" to Whitaker is not dischargeable if the underlying conduct that gave rise to that debt falls within one of the categories listed in section 523(a) of the Bankruptcy Code. *See In re Burton*, No. 08-50104, Adv. P. No. 08-5065, 2009 WL 537163, at *4 (Bankr. E.D. Tenn. Feb. 20, 2009) (claim for indemnification is not dischargeable if the underlying claim for which indemnity is sought is not dischargeable); *Pizza Patron Inc. v. Saenz (In re Saenz)*, 515 B.R. 521, 527–29 (Bankr. S.D. Tex. 2014) (finding that if franchisor was held to be vicariously liable for franchisee-debtor's conduct against third party in separate state action and if franchisor had a right to an indemnification or subrogation claim against franchisee, then franchisor's claim may be excepted from discharge under section 523(a)(4)).  Similar treatment has also been afforded to claims asserted by subrogees. *See In re Peters*, 90 B.R. 588, 604 (Bankr. N.D.N.Y. 1988) (collecting

sources); *see also In re Daly*, 247 B.R. 369 (Bankr. S.D.N.Y. 2000) (allowing a surety to assert a nondischargeability claim under section 523(a)(4) where the surety had paid the injured parties who were owed a fiduciary duty).  While there are substantial differences between indemnification and subrogation, the reasoning behind the exception of subrogation claims from discharge (where the underlying claim would not be dischargeable) applies with the same force to indemnification claims.

### B.    Contribution/Indemnity as to Penson's Charges Against the Clearing Account

Penson charged Whitaker's account to cover losses after the customers' accounts were liquidated.  The customers ordinarily would have been obligated to cover any losses in their accounts, but Whitaker was obligated to reimburse Penson for such deficits if Whitaker's customers did not do so.  Whitaker contends that Rosenfeld's misconduct is the reason why Whitaker (not the customers) had to cover the losses.  Whitaker's claim for indemnification for these losses is no different from what the claim would have been if (i) the customers had initially made the required payments to Penson, and (ii) Whitaker had then been forced to reimburse the customers for those amounts.  The overall effect is that Whitaker had to bear over $590,000 of losses in the customers' accounts, and Whitaker claims that it (not the customers) had to bear those losses because of the tortious conduct by Rosenfeld.  The Court concludes that Whitaker may assert claims for indemnification for these losses.  Whitaker's indemnification claims are not dischargeable to the extent that the underlying claims, which Whitaker paid and for which it now seeks indemnification, arose from conduct falling within one of the categories set forth in section 523(a) of the Bankruptcy Code.

## II.    Does the Settlement Agreement Bar Whitaker's Claims?

Rosenfeld argues that Whitaker denied liability in its dispute with the customers and did not admit liability in the settlement agreement that it executed with the customers, and that the settlement agreement therefore bars Whitaker from contending that Rosenfeld did anything wrong.  The Court rejects this contention.  The fact that Whitaker settled the customers' claims (rather than pursuing them to judgment) does not bar Whitaker from seeking indemnification from Rosenfeld as a matter of New York law.  *Denton Leasing Corp. v. Breezy Point Surf Club, Inc.*, 518 N.Y.S.2d 634, 635 (N.Y. App. Div. 1987) (citing *McDermott*, 428 N.Y.S.2d 643).  The Supreme Court also has held that debts arising from the settlement of a fraud claim may be excepted from discharge.  *See Archer v. Warner*, 538 U.S. 314 (2003) (holding that a settlement debt may arise out of "false pretenses, a false representation, or actual fraud," and consequently be excepted from discharge under section 523(a)(2)(A)); *Brown v. Felson*, 442 U.S. 127 (1979) (consent judgment debt).  For the same reasons, an indemnification claim that arises out of a settlement should be excepted from discharge, so long as the underlying conduct that gave rise to the indemnification claim falls within one of the exceptions to section 523.

The settlement agreement does not constitute "collateral estoppel" as to the claims against Rosenfeld, as Rosenfeld wrongly contends.  Collateral estoppel applies only "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment." *Arizona v. California*, 530 U.S. 392, 414 (2000) (citing Restatement (Second) of Judgments § 27, p. 250 (1982)); *see also Zimmerman v. Tower Ins. Co. of N.Y.*, 788 N.Y.S.2d 309, 310 (2004).  "[S]ettlements ordinarily occasion no *issue preclusion* (sometimes called collateral estoppel), unless it is clear . . . that the parties intended their argument to have such effect." *Arizona*, 530 U.S. at 414 (quotation omitted).  Here,

Whitaker settled with the customers.  There was no actual litigation or decision as to whether

Rosenfeld's conduct was wrongful or in what respects it was wrongful.

Finally, the fact that Whitaker disputed liability to the customers does not bar Whitaker

from claiming otherwise now that the customers' claims have been settled—under either

equitable or judicial estoppel principles.  Equitable estoppel is "a principle by which a party is

absolutely precluded from denying, or asserting the contrary of, any material fact that, by his or

her words or conduct, either affirmative or negative, the party has intentionally or negligently

induced another, who had a right to rely upon such words or conduct, to believe and act upon

them, thereby changing positions in such a way that he or she would suffer injury if a denial or

contrary assertion were allowed."  57 N.Y. Jur. 2d Estoppel, Etc. § 3 (citing *Triple Cities Const.*

*Co. v. Maryland Cas. Co.*, 151 N.E.2d 856 (N.Y. 1958)) (other citations omitted).  Rosenfeld

was certainly not, nor has he alleged to have been, injured by any alleged reliance on Whitaker's

prior denial of liability.  In fact, he benefited from it through the settlement that was reached.

Equitable estoppel therefore does not apply.  Nor is judicial estoppel applicable in this

case.  Judicial estoppel "precludes a party who assumed a certain position in a prior legal

proceeding and who secured a judgment in his or her favor from assuming a contrary position in

another action simply because his or her interests have changed."  *Abramovich v. Harris*, 643

N.Y.S.2d 811, 812 (N.Y. App. Div. 1996) (*quoting Prudential Home Mtge. Co. v. Neildan*

*Constr. Corp.*, 618 N.Y.S.2d 108 (N.Y. App. Div. 1994).  No judgment was secured at all in the

original FINRA proceeding because the parties settled and as such, the doctrine of judicial

estoppel is inapplicable.

If Whitaker had not put up a fight with the customers, Whitaker would have been at risk

that Rosenfeld would contend that some or all of Whitaker's damages were attributable to

Whitaker's own lack of backbone in defending the claims.  *See Rome Cable Corp. v.* Tanney,
250 N.Y.S.2d 304, 306 (N.Y. App. Div. 1964) (settlement with the injured party must have been
fair and reasonable for employer to succeed in subsequent indemnification claim against
employee for employee's tortious injury of third-party).  Parties who make indemnification
claims should not be automatically barred just because they attempted to limit their own
liabilities in the primary action.  *See Denton Leasing Corp.*, 518 N.Y.S.2d at 636 (rejecting
doctrine of estoppel against inconsistent positions in indemnification action brought by
statutorily-liable car owner against car driver after all parties had settled underlying tort claims);
*cf. George Cohen Agency, Inc. v. Donald S. Perlman Agency, Inc.*, 414 N.E.2d 689 (N.Y. 1980)
(alternative pleading allowed in third-party indemnity claim); *Schenectady Steel Co., Inc. v.*
*Guardian Life Ins. Co. of America*, 752 N.Y.S.2d 161, 163 (N.Y. App. Div. 2002) ("Inherent in
third-party practice is a defendant's ability to deny liability to a plaintiff but also to alternatively
argue that, if liability is found, then the third-party defendant is liable to it.").  Statements that
Whitaker made during the disputes with the customers, and evidence that Whitaker cited, should
be considered during a trial on the merits of Whitaker's claims, rather than as items that
foreclose Whitaker's indemnification claims in their entirety.

## III.    Are Whitaker's Claims Dischargeable?

Whitaker might have claims against Rosenfeld based on many theories (for breach of
contract, negligence, violations of regulations or other breach of duty).  However, the claims are
excepted from discharge only to the limited extent that they are based on particular legal theories
that are identified in section 523, the elements of which need to be alleged in Whitaker's
pleadings.  Whitaker invokes three of the exceptions listed in section 523.

### A.    Obtaining Money, Property, Services or Credit By False Pretenses or Actual Fraud (Section 523(a)(2)(A))

Section 523(a)(2)(A) excepts from discharge "any debt" for "money, property, services, or an extension, renewal, or refinancing of credit" to the extent obtained by "false pretenses, a false representation, or actual fraud . . ." The exception does not apply unless money, property, services or an extension of credit were actually obtained as a result of the types of wrongful conduct that are listed. 4 Collier on Bankruptcy ¶ 523.08 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2015).

"Actual fraud" means active, positive fraud rather than fraud implied in law. *Weiss v. Alicea (In re Alicea)*, 230 B.R. 492, 500 (Bankr. S.D.N.Y. 1999) (citing legislative history). Actual fraud requires a showing of the five traditional elements of a fraud claim under the common law. *Varble v. Chase (In re Chase)*, 372 B.R. 133, 137 (Bankr. S.D.N.Y. 2007) (citing *Sandak v. Dobrayel (In re Dobrayel)*, 287 B.R. 3, 12 (Bankr. S.D.N.Y. 2002)). These elements are: (1) a misrepresentation; (2) fraudulent intent or scienter; (3) intent to induce reliance; (4) justifiable reliance; and (5) damage. *In re Chase*, 372 B.R. at 139 (citing *In re Alicea*, 230 B.R. at 500; Restatement (Second) of Torts § 525).

In addition to actual fraud, section 523(a)(2) also excepts from discharge debts for property obtained by false pretenses. The concept of false pretenses has been broadly construed by the courts. It typically is found to be the product of multiple events, acts, or representations undertaken pursuant to a scheme of trickery, deceit, chicanery, or overreaching. *See Novartis Corp. v. Luppino (In re Luppino)*, 221 B.R. 693, 701 (1998); *In re Soliz*, 201 B.R. at 369 (citing *Evans v. Dunston (In re Dunston)*, 117 B.R. 632, 641 (Bankr. D. Colo. 1990), *aff'd in part*, rev'd in part, *Evans v. Dunston (In re Dunston)*, 146 B.R. 269 (D. Colo. 1992)). Omissions or a failure to disclose can give rise to a finding of false pretenses "where circumstances of the case are such that omissions or failure to disclose create a false impression" that is known by the debtor. *In re Soliz*, 201 B.R.

363, 369 (Bankr. S.D.N.Y. 1996) (citations omitted).  For example, a failure to disclose material

facts on which a transaction depends may constitute false pretenses.  *Id*.

Whitaker argues in opposition to the motion to dismiss that it has alleged actual fraud or

false pretenses in three ways:  (1) a direct fraud allegedly perpetrated by Rosenfeld against

Whitaker (Opp'n to Mot. to Dismiss 9–11); (2) a fraud allegedly perpetrated by Rosenfeld against

Penson (*Id*.); and (3) a fraud allegedly perpetrated by Rosenfeld against the customers.  (Pl.'s

Suppl. Br. 6, ECF No. 13.)  However, most of the details as to these alleged fraud claims are set

forth in Whitaker's motion papers, rather than in the Complaint or the FINRA statement of claim.

### 1.   The Contention that Whitaker Was Defrauded

Whitaker argues that Rosenfeld willfully made a series of misrepresentations and

omissions to Whitaker regarding the status of the customers' accounts.  (Opp'n to Mot. to Dismiss

9.)  However, no such misrepresentations or omissions are alleged in the Complaint or in the

FINRA statement of claim.   In fact, there is nothing in those documents that even hints that

Whitaker is contending that Rosenfeld defrauded Whitaker itself, as opposed to the contention that

Whitaker has indemnification claim for wrongs directed at the customers.

Whitaker argues in its motion papers, for example, that Rosenfeld told Whitaker's

Operations Manager that mutual funds were being deposited into the customers' accounts, and that

this statement was false.  (*Id*.)  It further argues that the statement was made to induce Whitaker

to reopen the accounts, and that Whitaker suffered significant losses as a result of the trades

Rosenfeld made on the reopened accounts.  (*Id*. 9–10.)  However, the FINRA statement of claim

merely refers to Rosenfeld's statement about the impending deposit.  The FINRA statement of

claim does not allege that the statement was actually false, and the Complaint itself does not

mention this conversation at all.

Whitaker's argument about a direct fraud against Whitaker itself therefore is not sufficient to sustain the Complaint. If Whitaker desires to assert a claim that Whitaker itself was defrauded by Rosenfeld, it will have to do so through an amendment of its pleadings. It is not clear to the Court whether the FINRA statement of claim may be amended to include such a claim, or whether Whitaker is limited to the particular claims that it set forth in the FINRA statement of claim. That is a matter that the parties will need to address if and when Whitaker attempts to pursue the claim in further proceedings.

### 2.    The Contention that Penson Was Defrauded

Whitaker argues in its motion papers that Rosenfeld "committed actual fraud when he stated to Penson's Margin Director that the margin call would be satisfied by a pending real estate deal." (Opp'n to Mot. to Dismiss 10–11.) To support this theory, Whitaker alleges that Penson did not liquidate the accounts at the time in reliance upon this false statement and as a result, the margin deficit significantly increased overnight, which Whitaker was then required to cover. (*Id.* 9) This particular claim of fraud, however, is not supported by the facts alleged in the Complaint or in the FINRA statement of claim.

The FINRA statement of claim alleges that Rosenfeld made the alleged statement to Penson, but it does not allege that the statement was false. The FINRA statement of claim also alleges that Penson's Margin Director refused to rely upon Rosenfeld's statement and, in fact, liquidated the customer accounts as planned. The Complaint does not mention the statement allegedly made by Rosenfeld to Penson's Margin Director at all.

Whitaker's argument that Penson was defrauded is not sufficient to sustain the Complaint, because Whitaker made no such claim in the Complaint or in the FINRA statement of claim. If Whitaker desires to pursue a claim that Rosenfeld defrauded Penson, it will have to do so through

an amendment of its pleadings.  As noted above, it is not clear to the Court whether the FINRA

statement of claim may be amended to include such a claim, or whether Whitaker is limited to the

particular claims that it set forth in the FINRA statement of claim.  That is a matter that the parties

will need to address if Whitaker attempts to pursue the claim in further proceedings.

### 3.    Fraud or False Pretenses as to the Customers

The Complaint asserts generally that Rosenfeld's actions "with respect to the management

of the customers' portfolio constitute Rosenfeld's having traded securities by false pretenses, false

representations and/or actual fraud, in violation of section 523(a)(2)(A), such that Rosenfeld's

indebtedness and obligations to Whitaker should be non-dischargeable."  (Compl. ¶ 28.).

It may well be the case that Whitaker can allege that Rosenfeld is guilty of actual fraud in

his dealings with the customers and that Whitaker's indemnification claim stems from that

conduct.  However, any such fraud claim would need to be far more specific as to the precise false

representations that were made, Whitaker's alleged knowledge of the falsity of the statements, the

customers' reliance on them, and the other elements of a fraud claim.  Whitaker must also allege

the specific money, property, services, or extensions of credit that were "obtained" through the

alleged fraud.  All that Whitaker has done to date is to make a generalized accusation that fraud

occurred.  There is no indication as to what misrepresentations (implied or express) Whitaker

actually made to the customers.  While some relevant facts are alleged, they are like pieces from a

jigsaw puzzle, offered to the Court with no clear guide as to how they fit together and with many

key pieces missing.

Similarly, if Whitaker believes that Rosenfeld is guilty of false pretenses as to the

customers it needs to be more specific in its pleadings as to the conduct that constituted "false

pretenses" and as to the specific alleged facts that support that claim.  Whitaker must also identify

the specific money, property, services or extensions of credit that were obtained through the allegedly wrongful conduct. It is not sufficient merely to describe a general pattern of unsuitable or unauthorized trading and then to apply a "false pretenses" label to it.

*          *          *

Whitaker's allegations and arguments obviously have been evolving as the motion to dismiss has been briefed. Its pleadings need to provide a clear picture of what the alleged fraud(s) or false pretense(s) were; the identities of the victim(s); the particular facts that allegedly show that the elements of the fraud or false pretenses claims have been met; and the facts that purportedly show how the elements of the section 523 exception from discharge have been satisfied, including (for each claim) the particular money, property, services or extensions of credit that allegedly were obtained through the alleged fraud or false pretenses. The existing Complaint falls short of these requirements, though the Court will grant permission to Whitaker to file an amended pleading to try to cure these shortcomings.

## B.    Fraud or Defalcation in a Fiduciary Capacity (Section 523(a)(4))

Section 523(a)(4) of the Bankruptcy Code excepts from discharge "any debt . . . for fraud or defalcation while acting in a fiduciary capacity . . . ." Whether a debtor is "acting in a fiduciary capacity" is a matter to be determined under federal law. *Zohlman v. Zoldan*, 226 B.R. 767, 772 (S.D.N.Y. 1998). Under federal law, the definition of fiduciary is more narrowly construed than under state law, and not all agency relationships will give rise to a fiduciary relationship. *In re Rich*, 353 B.R. 796, 806 (Bankr. S.D.N.Y. 2006). In particular, a constructive or implied trust arising merely on the basis of wrongful conduct (a trust ex maleficio) is insufficient to create a fiduciary relationship under federal law. *Id.*; *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 332 (1934). In addition, the "broad, general definition of fiduciary, involving confidence, trust and good faith, is not applicable . . . ." *Zohlman*, 226 B.R. at 772. On the other hand, although case

law frequently refers to the need for an "express" or "technical" trust to bring section 523(a)(4) into play, the Second Circuit has found this to be too restrictive a standard, and has held that parties may stand in a fiduciary relationship despite the absence of an "express" or "technical" trust. *Andy Warhol Foundation for Visual Arts, Inc. v. Hayes (In re Hayes)*, 183 F.3d 162, 168–70 (2d Cir.1999).

Whitaker has alleged that Rosenfeld breached fiduciary duties owed to Whitaker itself, but it is plain that an employee owes no fiduciary duty to an employer. *Shearson Lehman Hutton v. Schulman (Jn re Schulman)*, 196 B.R. 688, 698 (Bankr. S.D.N.Y. 1996). Whitaker's primary argument in opposition to the motion to dismiss was that Rosenfeld breached fiduciary duties that he owed to the customers.

Courts have differed as to whether and when the duties owed by a broker to his client give rise to the fiduciary relationship necessary to trigger nondischargeability under section 523(a)(4). Several courts have found that the requisite fiduciary relationship exists if the broker has discretionary control over customers' accounts. *See In re Caples*, 454 B.R. 191, 201–02 (Bankr. N.D. Ala. 2011) (debts nondischargeable where debtor acted as both broker and financial advisor and made essentially all investment decisions regarding an investment account); *Lanier v. Futch (In re Futch)*, 2011 WL 576071 (Bankr. S.D. Miss. 2011) (under Mississippi law a commodities broker owes a fiduciary duty to his customer); *Nugent v. Villalba (In re Villalba)*, 2007 WL 465421 (Bankr. N.D. Tex. 2007) (day trading losses were excepted from discharge under section 523(a)(4)); *McCoun v. Rea (In re Rea)*, 245 B.R. 77 (Bankr. N.D. Tex. 2000) (day trader owed fiduciary duty to clients); *Dimichele v. Nassbridges (In re Nassbridges)*, 434 B.R. 573 (Bankr. C.D. Cal.2010) (debtor holding himself out as experienced gold trader stood in fiduciary capacity to investors); *Prudential v. Pitman*, 1991 WL 160039 (N.D.Ga.1991) (a broker becomes a full-

fledged fiduciary of the customer with a discretionary account).  However, the only New York

case to consider the issue declined to find the necessary fiduciary relationship under section

523(a)(4) between a broker-debtor and a client.  *See, e.g.*, *In re Bendelac*, 2005 WL 3789126, No.

03-02457 (CGM), at *17 (Bankr. S.D.N.Y. Sept. 1, 2005) (declining to find that a broker-dealer

was a fiduciary within the meaning of section 523(a)(4) and rejecting argument to impute the

Investment Advisers Acts' statutory fiduciary duty to him where he was not registered as an

investment advisor).

In this case, the pleadings are not clear as to the existence of a fiduciary relationship of the

kind needed to invoke section 523(a)(4) and as to the particular conduct that allegedly constituted

fraud or defalcation while acting in the fiduciary capacity.  The pleadings allege that the customers

generally relied on Rosenfeld to recommend trades.  However, many if not all of the allegedly

unauthorized trades were made at times when Rosenfeld did not have discretionary trading

authority; in fact, the claim actually alleged against Rosenfeld is that he acted wrongfully (and

without authority) because he made trades without clearing them in advance with the customers.

Some of the trades allegedly were made even after "[t]he account was already coded as closed."

(Am. FINRA Claim 16.)  Unauthorized trading may have been wrongful, but if Rosenfeld's

discretionary authority or fiduciary status had ended (or never existed) his conduct could not be

construed to be fraud or defalcation "while acting in a fiduciary capacity."  *See Kirschner v.

Bennett*, 648 F.Supp.2d 525 (S.D.N.Y. 2009) ("the fiduciary duty is limited by the broker's

exercise of discretion on behalf of the customer, not by whether there is a colorable argument that

the broker is a crook").  Furthermore, any constructive trust arising pursuant to Rosenfeld's

unauthorized and unsuitable trades would be the very type of ex maleficio trust that the Supreme

Court has explicitly held is insufficient to give rise to nondischargeable liability. *See Davis*, 293 U.S. at 332.

The Complaint needs to provide clear allegations as to the nature of the fiduciary duty that Rosenfeld allegedly owed; to whom the fiduciary duty was allegedly owed; the circumstances that allegedly gave rise to that duty; the particular conduct that allegedly constituted "fraud" or "defalcation" while acting in the fiduciary capacity; and how the conduct is traceable to losses suffered by Whitaker. The existing Complaint does not do so, but the Court will permit Whitaker to file an amended pleading to try to meet these requirements.

### C.    Willful and Malicious Injury (Section 523(a)(6))

Section 523(a)(6) excepts from discharge "any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity." "Willfulness" and "malice" are distinct elements and cannot be lumped together to prevent discharge for any conduct that a court considers deplorable. *Yash Raj Films (USA) v. Akhtar (In re Akhtar)*, 368 B.R. 120, 127 (Bankr. E.D.N.Y. 2007).

"Willful," as used in section 523(a)(6), means "deliberate or intentional." *Navistar Financial Corp. v. Stelluti (In re Stelluti)*, 94 F.3d 84, 87 (2d Cir. 1998) (citing S.Rep. No. 989, 95th Cong., 2d Sess. 79 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5865; H.R.Rep. No. 595, 95th Cong., 2d Sess. 365 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6320) (other citations omitted). "Willful" modifies the word "injury" such that the injury itself must have been deliberate or intentional. *Kawaauhau*, 523 U.S. at 61. Knowledge of a substantial likelihood of causing injury is sufficient to show that an injury was willfully inflicted. *In re Solimon*, 515 B.R. 179, 191 (Bankr. S.D.N.Y. 2014) (collecting sources).

"Malicious," as used in section 523(a)(6), means "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." *In re Stelluti*, 94 F.3d at 87 (citations omitted). Malice under this section includes constructive and implied malice. *Id*. at 88. Typically implied malice is found where the behavior is of a type that the court cannot justify on any level. *Bundy Am. Corp. v. Blankfort (In re Blankfort)*, 217 B.R. 138, 143–44 (Bankr. S.D.N.Y. 1998) (collecting sources). Where the debtor is motivated by some potential profit or gain, however, malice will only be implied where there is additional, aggravating conduct on the part of the debtor to warrant an inference of actual malice. *Novartis Corp. v. Luppino (In re Luppino)*, 221 B.R. 693, 700 (Bankr. S.D.N.Y. 1998).

Injury that results from mere negligence or recklessness does not constitute "willful and malicious" injury within the meaning of section 523(a)(6). *Kawaauhau v. Geiger*, 523 U.S. 57, 61–62 (1998). Conversion by a broker of property in his possession, if willful and malicious, can be an injury to property within the scope of section 523(a)(6). *McIntyre v. Kavanaugh*, 242 U.S. 138 (1916). However, not all conversion is necessarily willful and malicious. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 332 (1934). The Supreme Court in *Davis* cited several examples of conversion that is tortious but that does not rise to the level of "willful and malicious" injury: for example, conversion which is innocent or technical, an authorized assumption of dominion without willfulness or malice, or conversion based on an honest but mistaken belief that powers have been enlarged or incapacities removed. *Id*.

Whitaker's papers in opposition to the motion to dismiss argue that Rosenfeld acted willfully and maliciously to injure Whitaker itself (Opp'n to Mot. to Dismiss 13), but no such claim is actually stated in the Complaint or in the FINRA statement of claim. Whitaker also argues in its opposition to the motion to dismiss that willful and malicious injuries were inflicted on the

customers, but the pleadings do not specifically identify the circumstances that constituted a "willful" and "malicious" infliction of injury. Instead, they just repeat the words of the statute and allege (without explanation) that the statutory requirements have been met.

Whitaker argues in its motion papers that a finding of "willfulness" is appropriate because Rosenfeld violated the securities industry rules and Whitaker's polices and knew that these violations would cause substantial harm to Whitaker. (*Id*. 14.) Whitaker cites several cases where bankruptcy courts have found willfulness under section 523(a)(6) where a debtor had knowledge that he was violating the law and continued to do so despite warnings. *See Yash Raj Films (USA) v. Ahmed (In re Ahmed)*, 359 B.R. 34 (Bankr. E.D.N.Y. 2005) (debtor violating Copyright Act by selling unauthorized copies of DVDs); *In re Akhtar*, 368 B.R. 120 (same). However, these cases are distinguishable in a crucial way from this case. In the cases cited by Whitaker, the debtors were selling another person's copyrighted material for their own benefit in violation of the Copyright Act and without any possible benefit for the copyright owner. The necessary consequence of those unauthorized sales was the copyright owner's own loss of revenue, such that the willful misbehavior necessarily resulted in an injury to the property interests of the copyright owner. Here, Rosenfeld was allegedly trading on the customers' accounts without authorization in violation of securities industry rules. However, there was a chance that the trades would turn out well for the customers.

Whitaker argues that the customers somehow suffered willful and malicious injury from the mere fact that Rosenfeld made the trades, regardless of whether they were profitable or unprofitable. (Pl.'s Suppl. Br. 7.) However, Whitaker fails to explain what that injury might have been. Furthermore, Whitaker's unsupported assertion in its motion papers that Rosenfeld knew

his trading violations were "substantially certain" to cause injury is without any support in the pleadings themselves.

Whitaker also argues that the fact that Rosenfeld's actions "were not aimed at generating profit for himself" or at embezzling the customers' funds necessarily means that Rosenfeld must have been motivated by a desire to inflict harm upon the customers. However, this argument wholly ignores Whitaker's own contention that Rosenfeld acted as he did in the hope that the trades would make money and that Rosenfeld could thereby "remediate the previous harm he caused to Customers." Whitaker's conduct may have been unauthorized, but to the extent he was trying to correct for past losses and save his customers money and save his own job it is difficult to see an allegation that he was motivated by malice.

Finally, Whitaker argues that "the totality of [Rosenfeld's] actions is so pervasive and egregious that the aggravating factor for malice is also met." However, no further explanation or factual support is offered for a finding of the requisite aggravating factors necessary for implied malice.

Whitaker has failed to allege facts in its pleadings which could give rise to a finding that Rosenfeld inflicted "willful and malicious" injury to an entity or to property under section 523(a)(6), but will be given an opportunity to amend its pleadings if it believes that the underlying claims will support such an allegation.

## CONCLUSION

For the foregoing reasons the motion to dismiss shall be granted, but without prejudice to the right of Whitaker to file an amended complaint.  Any such complaint shall be filed on or before January 15, 2016.  A separate order will be entered to this effect.

Dated:  New York, New York
        December 16, 2015

                              <u>**s/Michael E. Wiles**</u>
                              Michael E. Wiles
                              United States Bankruptcy Judge